

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

**Signed June 28, 2006**

_signature_

**United States Bankruptcy Judge**

Wiley F. James, III, SBN 10554300
James & Haugland, P.C.
P.O. Box 1770
El Paso, Texas 79949-1770
Telephone: 915-532-3911
Facsimile: 915-541-6440
**Attorneys for Hawkhill Operating Company, LLC**

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HAWKHILL OPERATING | § | Case No. 04-60319-RLJ |
| COMPANY, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On this 14th day of June, 2006, came on for consideration by this Court the hearing on

Confirmation of Hawkhill Operating Company, LLC's Fourth Amended Plan of Reorganization, As

Modified March 21, 2006 and as Further Modified on May 5, 2006 (First Modification), June 7, 2006

(Second Modification), June 12, 2006 (Third Modification) and June 16, 2006 (Fourth Modification)

and as modified in open court on June 14, 2006, during the Confirmation Hearing) (hereinafter collectively referred to as the "Plan") of Hawkhill Operating Company, LLC. Wiley F. James, III appeared on behalf of Hawkhill Operating Company, LLC (hereinafter referred to as the "Debtor"). Patrick W. Merritt appeared as the Debtor's Court Appointed Chief Executive Officer. Randall L. Rouse appeared on behalf of Baker Hughes, Inc. Chris Harper and Greg Bevel appeared on behalf of Stephen G. Hillmer.

All parties appearing in connection with the confirmation of the Plan were duly noted on the record. The capitalized terms used herein but which are not defined shall have the same meaning as is set forth in the Plan.

After consideration of the Plan (as defined herein), the pleadings on file, the arguments of counsel, exhibits tendered, the proffer and declarations filed in support of confirmation of the Plan, together with the records and files in this Chapter 11 proceeding, this Court hereby makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.      On or about August 8, 2004 (hereinafter referred to as the "Petition Date"), an involuntary petition was filed against Hawkhill Operating Company, LLC (hereinafter referred to as "Hawkhill" or the "Debtor") under Chapter 7 of the Bankruptcy Code by Baker Hughes, Inc., Key Energy Services, Inc., Schlumberger Oilfield Services under Case Number 04-60319 pending in the United States Bankruptcy Court, Northern District of Texas, San Angelo Division.

2.      On October 8, 2004, an Order for Relief was entered against the Debtor.

3.    On November 16, 2004, the Court entered its Order converting the Debtor's case from Chapter 7 to Chapter 11.

4.    Since November 16, 2004, the Debtor has operated as a Debtor-in-Possession under the above-referenced case number in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

5.    The Debtor filed its Fourth Amended Disclosure Statement, as Modified March 21, 2006 on the 21st day of March, 2006 [Docket Number 248].

6.    This Court conditionally approved the Debtor's Fourth Amended Disclosure Statement, as Modified March 21, 2006 by its Order dated March 8, 2006 [Docket Number 237].

7.    The Debtor filed its Fourth Amended Plan of Reorganization, as Modified March 21, 2006 on the 21st day of March, 2006 [Docket Number 247].

8.    On May 5, 2006, the Debtor filed a Modification to Debtor's Fourth Amended Plan of Reorganization, as Modified March 21, 2006 [Docket Number 275].  As this modification was substantive to the rights of Class 11 Claimants, only Class 11 Claimants were reballoted.

9.    On June 7, 2006, the Debtor filed its Second Modification to Debtor's Fourth amended Plan of Reorganization, as Modified March 21, 2006 [Docket Number 293]. Because the Debtor's Second Modification did not contains substantive changes to the rights of any of the Debtor's Creditors, the Debtor did not reballot any class of creditors.

10.    On June 12, 2006, the Debtor filed its Third Modification to Debtor's Fourth Amended Plan of Reorganization, as Modified March 21, 2006 [Docket Number 307]. Because the Debtor's Third Modification did not contains substantive changes to the rights of any of the Debtor's Creditors, the Debtor did not reballot any class of creditors.

11.      On June 16, 2006, the Debtor filed its Fourth Modification to Debtor's Fourth Amended Plan of Reorganization, as Modified March 21, 2006 [Docket Number 313]. The Debtor's Fourth Modification was necessitated by settlements which occurred on June 14, 2006, and read into this Court's record during the Confirmation Hearing.

12.      Copies of the Fourth Amended Disclosure Statement, as Modified March 21, 2006 on the 21st day of March, 2006, the Ballot for accepting or rejecting the Plan, the Fourth Amended Plan of Reorganization, and a copy of the Order Conditionally Approving the Fourth Amended Disclosure Statement, as Modified March 21, 2006 on the 21st day of March, 2006 was properly and timely mailed to all known creditors and parties in interest in this Chapter 11 case.

13.      The procedures set forth in the Fourth Amended Disclosure Statement, as Modified March 21, 2006 on the 21st day of March, 2006 and the Order Conditionally Approving the Fourth Amended Disclosure Statement, as Modified March 21, 2006 on the 21st day of March, 2006 were properly adopted and followed by the proponent of the Plan in connection with the transmission, receipt and tabulation of the ballots. Such procedures were adequate and appropriate under the circumstances.

14.      A copy of the Modification to the Fourth Amended Plan of Reorganization, as Modified March 21, 2006 was properly and timely mailed to all known creditors and parties in interests in this Chapter 11 case.

15.      A copy of the Second Modification to the Fourth Amended Plan of Reorganization, as Modified March 21, 2006 [Docket Number 293] was properly and timely mailed to all known creditors and parties in interests in this Chapter 11 case.

16.     A copy of the Third Modification to the Fourth Amended Plan of Reorganization, as Modified March 21, 2006 [Docket Number 307] was properly and timely mailed to all known creditors and parties in interests in this Chapter 11 case.

17.     The Fourth Modification to the Fourth Amended Plan of Reorganization, as Modified March 21, 2006 [Docket Number 313] was tendered to the Court under Section 1127(a) and ordered filed with the Court immediately after the haring, and mailed to creditors and parties in interest.

18.     All deadlines contained in the Plan (and all subsequent modifications thereto) were reasonable and complied with the applicable provisions of Title 11, United States Code.

19.     The Plan complies with the applicable provisions of Title 11, United States Code.

20.     The proponent of the Plan has complied with the applicable provisions of Title 11, United States Code.

21.     The Plan has been proposed in good faith and is not, by any means, forbidden by law.

22.     The Proffer of Patrick W. Merritt filed on the June 12, 2006 [Docket Number 306] was accepted into evidence without objection.

23.     The Debtor's Exhibits (labeled 1 through 11 and including the June 2006 Cash Flow Projection) were accepted into evidence without objection.

24.     Any payment made or to be made by the Debtor in connection with the case or in connection with the Plan, has been approved by, or is subject to the approval of, the United States Bankruptcy Court as reasonable.

25.     On the Petition Date, the Equity Security Holders, Stephen G. Hillmer and Trey Hawkins, each owned fifty percent (50%) of the membership interests of the Debtor.

26. The membership interests of the Equity Security Holders are hereby cancelled without payment. In accordance with the Plan, Patrick W. Merritt paid $1.00 for the one hundred percent (100%) of the membership interests of the Debtor. The membership interests of the Reorganized Debtor now vest with Patrick W. Merritt.

27. The Plan does not provide for any rate changes subject to approval by any governmental or regulatory commission with jurisdiction over the rates of Debtor.

28. Each holder of an Allowed Claim or an Allowed Interest in each class of Allowed Claims or Allowed Interests in the Plan will receive or retain under the Plan on account of such Allowed Claim or Allowed Interest, property of a value as of the Effective Date that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

29. Classes 5, 6, 7, 8, 9, 11, 12 and 15 are impaired under the Plan

30. The Debtor's Ballot Certification filed pursuant to Local Rule 3018.2 containing the tabulation of votes was admitted into evidence without objection and the same was accepted by this Court.

31. The Plan deals with the Impaired Classes listed above, and provides fair and equitable treatment to such Classes pursuant to the provisions of 11 U.S.C. § 1129(b)(2)(A).

32. The Plan does not discriminate unfairly and is fair and equitable with regard to each Class of Claims or Interests.

33. The Plan provides that the holder of an Allowed Claim specified in Section 507(a)(1), 507(a)(2), 507(a)(3) or 507(a)(7) of the Bankruptcy Code shall receive cash equal to the allowed amount of such Allowed Claim on a monthly basis, pro-rata.

34.     Confirmation of the Plan is not likely to be followed the need for further financial reorganization of the Debtor or Reorganized Debtor.

35.     The Reorganized Debtor, the Disbursing Agent and the Liquidating Trustee are authorized, immediately upon entry of this Order, to execute any and all documents or instruments and to take any and all actions necessary or appropriate to implement the Plan.

36.     The Plan and all transactions contemplated thereunder do not have as their principal, secondary or underlying purpose the evasion or avoidance of any taxes by any means, including without limitation, securing the benefit of a deduction, credit or other allowance.

37.     All Administrative Claims up through the date of confirmation of the Plan shall be filed and served on the attorneys for the Debtor within thirty (30) days after the entry of the Order confirming the Plan or such Administrative Claims and expenses shall forever be barred and discharged.

38.     The Debtor has complied with all reporting and filing requirements and is in compliance with all applicable rules, regulations and laws imposed by the State of Texas, any other state, and the United States, including but not limited to Title 11, United States Code and the Internal Revenue Code.

39.     All tax returns and other information reporting returns, as may have been filed and amended, heretofore filed by the Debtor is deemed to have been timely and accurately filed and accurately reflect all transactions and other amounts set forth therein.

40.     The Reorganized Debtor, the Disbursing Agent and the Liquidating Trustee have been ordered to take all steps necessary to effectuate the Plan on the Effective Date.

41.     The Reorganized Debtor or the Liquidating Trustee shall file the Motion to Enter Final Decree and report of distribution on or before the 180th day following the Effective Date under Case No. 04-60319, and the case shall be closed as soon thereafter as is practicable.

42.     **The Disbursing Agent is required to pay all fees due and owing as of the Confirmation by the Debtor to the United States Trustee's Office. All fees will be paid in full on the Effective Date.**

43.     The Reorganized Debtor, the Disbursing Agent or the Liquidating Trustee will file such post-Confirmation reports as the United States Trustee may reasonably require until a final decree is entered in the case.

44.     On April 21, 2006, Stephen G. Hillmer filed his Objection to Confirmation of Debtor's Fourth Amended Plan of Reorganization as Modified March 21, 2006 [Docket Number 265]. On June 6, 2006, Stephen Hillmer filed his Objection to Confirmation of Debtor's Fourth Amended Plan of Reorganization as Modified March 21, 2006 and as Further Modified on May 8, 2006 [Docket Number 290]. All objections filed by Stephen Hillmer are hereby withdrawn as stated in open Court at the Confirmation Hearing.

45.     On June 7, 2006, Dallas County and Shackelford County filed their Conditional Objection to the Debtor's Modified Fourth Amended Plan of Reorganization [Docket Number 295]. The objection, if not withdrawn, is overruled.

46.     On June 1, 2006, Stephen Hillmer's filed his Emergency Motion to Determine Debtor's Interest in Oil and Gas Leases [Docket Number 283]. The Debtor has acquiesced that the Chase #1 Oil and Gas Lease by and between the Debtor and Francis Jeanette Buckler, Stacy Jo Alice Buckler Hawkins and Angelo D. Campanile on behalf of Jo Alice Buckler Adami

Trust (through Bessemer Trust Company) (hereinafter collectively referred to as the "Walker Buckler Trust") is terminated as of June 14, 2006. The Debtor has abandoned all interests in the Chase #1 Well.

47. On June 1, 2006, Stephen Hillmer filed his Emergency Motion to Amended Orders [on the compromises reached with the Core Langhofer Group, First and Second Non-Core Langhofer Group and Non-Adversary Langhofer Group [Docket Number 281]. Stephen Hillmer has withdrawn his Emergency Motion as stated in open Court at the Confirmation Hearing.

48. The Court has grave concerns regarding the current validity of Debtor's interests in the Chase #1 Lease and the Chase #2 Lease located in Shackelford County, Texas. Based upon the Court's concerns regarding the ultimate interest ownership in the Chase #1 and Chase #2 Well Leases, on June 14, 2006, the Debtor and Stephen Hillmer entered into the agreement incorporated into the Fourth Modified Fourth Amended Plan of Reorganization [Docket Number 313] to ensure that the Debtor's Plan was confirmed and to avoid the uncertainty of litigation. The terms of the settlement by and between the Debtor and Stephen Hillmer are as follows:

   a. Hillmer will withdraw his objection to the Debtor's Modified Fourth Amended Plan of Reorganization;

   b. Hillmer will amend his prior ballots for claims numbered 5, 31, and 34 and will vote in favor of the Debtor's Modified Fourth Amended Plan of Reorganization;

   c. Hillmer will withdraw his Motion to determine the status of certain leases, and his Motion to Amend prior Orders;

d.   Hillmer will assign any interest he owns in the claim number 31 (previously held by Smalley Trucking against the Debtor) to the Debtor on the Effective Date;

e.   The Debtor / Reorganized Debtor will dismiss, with prejudice, the adversary proceeding (Adversary Proceeding 06-06006) against Hillmer, leaving only Trey Hawkins as a Defendant;

f.   The Debtor will obtain as a part of its Plan Confirmation, an order of the Bankruptcy Court that holds and finds that the Lease dated December 31, 2002 between the Walker Buckler Trust and the Debtor and which covers the Chase #1 well, has terminated, and the Debtor abandons any interest it might have had with regard to that lease and in the Chase #1 well. Hillmer will obtain a new lease from the Walker Buckler Trust in sufficient acreage to provide the Debtor / Reorganized Debtor with the same proration unit required by the Texas Railroad Commission (hereinafter referred to as the "RRC") to be a legal location within the Francis Brown Survey A-5 and the John Shirley Survey No. 2 A234, in combination not to exceed 40 acres;

g.   The Debtor will further obtain an order from the Bankruptcy Court that holds and finds that the Debtor will retain for purposes of oil and gas production, the Chase #2 well bore, the contents of the Chase #2 well bore, any equipment used to service the Chase #2 well bore, and whatever lease rights are held by production by virtue of the production from the Chase #2 well, being the acreage allocated by the Railroad Commission to the Chase #2 well to its current depth and to 100 feet below the current producing zone. Hillmer will obtain a new lease from the Walker Buckler Trust in sufficient acreage to provide the Debtor / Reorganized Debtor with the

proration unit required by the RRC to be a legal location within the Francis Brown Survey A-5 and the John Shirley Survey No. 2 A234, in combination not to exceed 40 acres;

h.  The Debtor and Hillmer will enter into a written agreement that will allow the Debtor / Reorganized Debtor to dispose of one hundred percent (100%) of the produced water from the Chase #2 Well limited only to the extent that water production from Chase #1 increases to a point that the combined production from both wells exceeds the permitted disposal amount. At the time, the RRC permitted disposal amount is exceeded, production from both Chase #1 and Chase #2 shall be curtailed in amounts pro-rationally from each well to the whole. The Debtor/Reorganized Debtor and Hillmer will share direct expenses on an equal basis. Hillmer will be responsible for maintaining true and correct records as required by all appropriate regulatory agencies. A copy of all records will be supplied to the Debtor / Reorganized Debtor. In lieu of overhead charges, the Debtor/ Reorganized Debtor will pay Hillmer $50.00 per month for regulatory filings and accounting on the Salt Water Disposal Well (Walker Buckler/TR 40A Well 1D (Lease Number 09385));

i.  Hillmer will retain the American pumping unit from the Walker Buckler Lease premises, and all other equipment located on the Walker Buckler Lease premises, save and except the Lufkin pumping unit. The Debtor / Reorganized Debtor will retain the Lufkin pumping unit from the Walker Buckler Lease premises;

11

j.     Debtor / Reorganized Debtor will abandon all IPACT operated wells save and except the Salt Water Disposal Well (Walker Buckler/TR 40A Well 1D (Lease Number 09385));

k.     Hillmer will pay the Debtor / Reorganized Debtor $10,500.00 for the Clayton Lease (Clayton #1 and Clayton #2 Wells) within thirty (30) days of the Effective Date, and the Debtor will convey any interest it has in the Clayton Lease and Clayton #1 and Clayton #2 wells to Hillmer within thirty (30) days of the Effective Date;

l.     Hillmer will operate the Salt Water Disposal Well (Walker Buckler/TR 40A Well 1D (Lease Number 09385)) and ensure that all equipment associated with the Salt Water Disposal Well operations will remain operational at all times;

m.     Hillmer will take no action to interfere, terminate, modify and/or reduce the Debtor's / Reorganized Debtor's ability to continue to use the current Salt Water Disposal Well or a future replacement well provided that Debtor / Reorganized Debtor pays its fifty percent (50%) share of direct expenses in preparing a replacement well for disposal. The Debtor/Reorganized Debtor will retain access to the Salt Water Disposal Well currently being used or have the option of disposing into any future replacement disposal well if the current disposal well is deemed to be unfit for disposal or for any other reasons the ability of the Debtor / Reorganized Debtor to dispose of water via pipeline becomes impaired;

n.     Steve Hillmer, Trey Hawkins, their agents or any business entity (including but not limited to any corporation, limited liability company, limited or general partnership) in which they, either jointly or severally, have any ownership or other beneficial

interest, hereby agree that they will not locate, drill or operate any hydrocarbon well at a depth within the same current completion formation, being that correlative interval as can be found at a depth of 3,860 feet to 4,450 feet on the Compensated Density Neutron Microlog as the Chase A Number 2 run by Phoenix Surveys, Inc. for Hawkhill Operating LLC on May 4 2003, or which is violative of the spacing requirements mandated in the field rules established by the Texas Railroad Commission for the field in which the Chase A Number 2 well is located, the Fort Griffin, N.E. (Miss.) Field which are attached to this order as Exhibit 2 and incorporated by reference herein;

o.    The Debtor / Reorganized Debtor rejected all Joint Operating Agreements with any working interest owner relating to the Chase #2 Well and its operations; and

p.    The terms of the settlement between Hillmer and the Debtor, announced in open Court at the Confirmation Hearing, are approved.

49.   To the extent any of the Conclusions of Law set forth below include Findings of Fact, they are incorporated herein by this reference.

## CONCLUSIONS OF LAW

A.    To the extent any of the Findings of Fact set forth above include Conclusions of Law, they are incorporated herein by this reference.

B.    The proceeding with respect to the confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 case pursuant to 28 U.S.C. §157(a) and has jurisdiction to make the Findings of

Fact and Conclusions of Law referred to herein and to enter the Order Confirming Plan of Reorganization, dated of even date herewith and entered concurrently herewith.

C.     The Plan was prepared and filed in compliance with the applicable provisions of Title 11, United States Code, contains all provisions required by Section 1123 of the Bankruptcy Code, and contains only such other provisions as are permitted by Sections 105 and 1123 of the Bankruptcy Code and as are consistent with Title 11, United States Code.

D.     All Claims and Interests have been properly classified in the Plan in accordance with Section 1122 of the Bankruptcy Code. The Classification of Claims in the Plan complies with the applicable case law mandate set forth by *In Matter of Sun Country Development, Inc.*, 764 F.2d 406 (5th Cir. 1985) and *In re Meadow Glen. Ltd.*, 87 B.R. 421 (Bankr.W.D. Tex 1988).

E.     Notice of the hearing to consider confirmation of the Plan, the date fixed for filing acceptances or rejections of the Plan and the date fixed for filing objections to confirmation of the Plan was appropriate and the best notice possible under all of the circumstances, as required by Section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 3017 and all other applicable law.

F.     The Fourth Amended Disclosure Statement, as Modified March 21, 2006 complies with the applicable provisions of Title 11, United States Code, including, without limitation, Section 1125 of the Bankruptcy Code.

G.     The solicitation of acceptances of the Plan by the Debtor, including, without limitation, the procedures adopted and followed by the Debtor in transmitting, receiving and tabulating acceptances and rejections of the Plan, were in compliance with Sections 1125 and 1126 of

the Bankruptcy Code and applicable bankruptcy rules and were appropriate and adequate under all of the circumstances of these cases.

H.   The Disbursing Agent, Christopher Ryan, shall cause all production proceeds to be distributed in accordance with the Plan.

I.   The Liquidating Trustee, Christopher Ryan, shall be authorized, without any additional order of the Bankruptcy Court, to investigate, commence, enforce, compromise, adjust and prosecute any and all claims, causes of action, rights or interests of the Debtor, including but not limited to, objections to claims and interests, matters affecting taxes, tax refunds, tax returns, tax attributes, or tax benefits of the Debtor, and all other proceedings and matters over which the Bankruptcy Court shall retain jurisdiction pursuant to the Plan.

J.   The Liquidating Trustee shall be authorized to continue to employ and compensate its professionals and to employ and compensate additional professionals as the Debtor may deem necessary and appropriate without further order of this Court.

K.   Implementation of the Plan and the transactions contemplated thereunder will not result in the elimination of the net operating losses and investment tax credit carryovers under Sections 269, 382, 383 or any other applicable provisions of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, as amended, of the Debtor.

L.   Implementation of the Plan and the transactions contemplated in the Plan, including, without limitation, the discharge of indebtedness, will not result in the recognition of any income or the elimination or limitation of tax attributes, including, without limitation, net operating loss, suspended losses, or investment tax credit carryovers for the Reorganized Debtor.

M.     Implementation of the Plan and the transactions contemplated thereunder will not result in any state tax, including sales and use tax, for the Debtor.

N.     All of the requirements for confirmation of the Plan specified by Section 1129 of the Bankruptcy Code have been satisfied.

O.     The Plan should be **CONFIRMED.**

P.     Any and all administrative claims and expenses and claims under the Plan must be filed and served on counsel for the Debtor on or before the 30th day following the entry of the Order Confirming the Plan or such Administrative Claims and expenses shall forever be barred and discharged.

Q.     The Bankruptcy Court shall retain full jurisdiction as provided in 28 U.S.C. § 1334 and by 28 U.S.C. § 157 to enforce the provisions, purposes, and intent of the Plan including, without limitation, the authority to:

   i      to determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims or Equity Interests;

   ii     to adjudicate all claims or any lien asserted against any property of the Reorganized Debtor or any proceeds thereof;

   iii    to adjudicate all Claims or controversies arising during the pendency of this Chapter 11 case between the Reorganized Debtor and any third-party;

   iv     to recover all assets and properties of the Reorganized Debtor wherever located, including recoveries in all claims and causes of action brought by the Reorganized Debtor, both before and after the Confirmation Date, including but not limited to Sections 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, and 551 of the Bankruptcy Code, as well as any Claim or cause of action, or right described elsewhere in the Plan or Disclosure Statement;

   v      to hear and determine matters covering state, local and federal taxes pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code;

vi      to hear and determine any and all applications for allowance and payment of fees and expenses made by attorneys and other professionals pursuant to Sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed by the Debtor pursuant to provisions within the Bankruptcy Code, and any objections thereto;

vii     to determine any applications pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom and any other issue that may arise under Section 365 of the Bankruptcy Code, including and not limited to leases or executory contracts;

viii    to approve the terms and conditions of the sale of any property of Debtor's estate pursuant to Section 363 of the Bankruptcy Code, and the final distribution of the proceeds from such sales;

ix      to determine all questions and disputes regarding Title to and liens on, the assets of the estate and determination of all causes of action, controversies, disputes, or conflicts whether or not subject to an action pending as of the date of Confirmation of the Plan, between the Debtor and any other party;

x       to hear and determine any and all motions, applications, adversary proceedings and contested or litigated matters regarding Claims or interest, accrued prior to the Confirmation Date, as to assets revested pursuant to Section 1141 of the Bankruptcy Code;

xi      to consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

xii     to determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Person's obligations hereunder;

xiii    to hear and determine any matters arising in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, conveyance, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

xiv    to issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code and Rule 7070 of the Federal Rules of Bankruptcy Procedure;

xv    to hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the Untied States Code that may arise in connection with or related to this Plan;

xvi    to determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan, the Confirmation Order, the Effective Date or the Distribution Date;

xvii    to enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such rights, title and powers as the Bankruptcy Court may deem necessary;

xviii    to hear and determine during the period in which the Chapter 11 Case remains open, all controversies, disputes and issues relating to the Discharge of the Debtor; and

xix    to enter a final decree closing this Chapter 11 case.

S.    The Liquidating Trustee shall retain the powers of a Debtor-in-Possession for the purpose of prosecuting claims and causes of actions under Sections 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, available to the estate, with full authority to preserve, compromise and resolve all such claims and causes of action. The Bankruptcy Court shall retain jurisdiction to hear and resolve by final order all such claims and causes of action subject to any pending or future Motions to Withdraw Reference. All such claims and causes of action shall inure to the benefit of the Liquidating Trustee and any recoveries upon such causes of action may, in the Liquidating Trustee's discretion, be used to satisfy any or all obligations to Creditors under the Plan.

T.       The Plan and all transactions contemplated thereunder do not have as their principal, secondary or underlying purpose the evasion or avoidance of any taxes by any means, including without limitation, securing the benefit of a deduction, credit or other allowance.

U.       The Debtor has complied with all reporting and filing requirements and is in compliance with all applicable rules, regulations and laws imposed by the State of Texas, any other state, and the United States, including but not limited to Title 11, United States Code and the Internal Revenue Code.

V.       All tax returns and other information reporting returns, as may have been filed and amended, heretofore filed by the Debtor is deemed to have been timely and accurately filed and accurately reflect all transactions and other amounts set forth therein.

W.       The Reorganized Debtor and Liquidating Trustee are authorized, immediately upon entry of this Order, to execute any and all documents or instruments and to take any and all actions necessary or appropriate to implement the Plan.

X.       The Reorganized Debtor and Liquidating Trustee are authorized to enter into any and all documents necessary to effectuate the Plan.

Y.       On the Petition Date, the Equity Security Holders, Stephen G. Hillmer and Trey Hawkins, each owned fifty percent (50%) of the membership interests of the Debtor.

Z.       The membership interests of the Equity Security Holders are hereby cancelled without payment. In accordance with the Plan, Patrick W. Merritt paid $1.00 for the one hundred percent (100%) of the membership interests of the Debtor. The membership interests of the Reorganized Debtor now vest with Patrick W. Merritt.

AA. The Debtor/Reorganized Debtor have been ordered to take all steps necessary to effectuate the Plan on the Effective Date.

BB. All impaired classes of the Debtor voted in favor of the Plan.

CC. The Reorganized Debtor or Liquidating Trustee shall file its Motion to Enter Final Decree and report of distribution on or before the 180th day following the Effective Date under Case No. 04-60319, and shall be closed as soon thereafter as is practicable.

DD. **The Disbursing Agent is required to pay all fees due and owing as of the Confirmation by the Debtor to the United States Trustee's Office. All fees will be paid in full on the Effective Date.**

EE. The Reorganized Debtor or Liquidating Trustee will file such post-Confirmation reports as the United States Trustee may reasonably require until a final decree is entered in the case.

FF. The Proffer of Patrick W. Merritt filed on the June 12, 2006 [Docket Number 306] was accepted into evidence without objection.

GG. The Debtor's Exhibits (labeled 1 through 11 and including the June 2006 Cash Flow Projection) were accepted into evidence without objection.

HH. On April 21, 2006, Stephen G. Hillmer filed his Objection to Confirmation of Debtor's Fourth Amended Plan of Reorganization as Modified March 21, 2006 [Docket Number 265]. On June 6, 2006, Stephen Hillmer filed his Objection to Confirmation of Debtor's Fourth Amended Plan of Reorganization as Modified March 21, 2006 and as Further Modified on May 8, 2006 [Docket Number 290]. All objections filed by Stephen Hillmer are hereby withdrawn as stated in open Court at the Confirmation Hearing.

II. On June 7, 2006, Dallas County and Shackelford County filed their Conditional Objection to the Debtor's Modified Fourth Amended Plan of Reorganization [Docket Number 295]. The objection, if not withdrawn, is overruled.

JJ. On June 1, 2006, Stephen Hillmer's filed his Emergency Motion to Determine Debtor's Interest in Oil and Gas Leases [Docket Number 283]. The Debtor has acquiesced that the Chase #1 Oil and Gas Lease by and between the Debtor and Francis Jeanette Buckler, Stacy Jo Alice Buckler Hawkins and Angelo D. Campanile on behalf of Jo Alice Buckler Adami Trust (through Bessemer Trust Company) (hereinafter collectively referred to as the "Walker Buckler Trust") is terminated as of June 14, 2006. The Debtor has abandoned all interests in the Chase #1 Well.

KK. On June 1, 2006, Stephen Hillmer filed his Emergency Motion to Amended Orders [on the compromises reached with the Core Langhofer Group, First and Second Non-Core Langhofer Group and Non-Adversary Langhofer Group [Docket Number 281]. Stephen Hillmer has withdrawn his Emergency Motion as stated in open Court at the Confirmation Hearing

LL. On June 14, 2006, the Debtor and Stephen Hillmer entered into the agreement incorporated into the Fourth Modification to the Fourth Amended Plan of Reorganization [Docket Number 313] to ensure that the Debtor's Plan was confirmed and to avoid the uncertainty of litigation. The terms of the settlement by and between the Debtor and Stephen Hillmer are as follows:

 1. Hillmer will withdraw his objection to the Debtor's Modified Fourth Amended Plan of Reorganization;

 2. Hillmer will amend his prior ballots for claims numbered 5, 31, and 34 and will vote in favor of the Debtor's Modified Fourth Amended Plan of Reorganization;

3.    Hillmer will withdraw his Motion to determine the status of certain leases, and his Motion to Amend prior Orders;

4.    Hillmer will assign any interest he owns in the claim number 31 (previously held by Smalley Trucking against the Debtor) to the Debtor on the Effective Date;

5.    The Debtor / Reorganized Debtor will dismiss, with prejudice, the adversary proceeding (Adversary Proceeding 06-06006) against Hillmer, leaving only Trey Hawkins as a Defendant;

6.    The Debtor will obtain as a part of its Plan Confirmation, an order of the Bankruptcy Court that holds and finds that the Lease dated December 31, 2002 between the Walker Buckler Trust and the Debtor and which covers the Chase #1 well, has terminated, and the Debtor abandons any interest it might have had with regard to that lease and in the Chase #1 well. Hillmer will obtain a new lease from the Walker Buckler Trust in sufficient acreage to provide the Debtor / Reorganized Debtor with the same proration unit required by the Texas Railroad Commission (hereinafter referred to as the "RRC") to be a legal location within the Francis Brown Survey A-5 and the John Shirley Survey No. 2 A234, in combination not to exceed 40 acres;

7.    The Debtor will further obtain an order from the Bankruptcy Court that holds and finds that the Debtor will retain for purposes of oil and gas production, the Chase #2 well bore, the contents of the Chase #2 well bore, any equipment used to service the Chase #2 well bore, and whatever lease rights are held by production by virtue of the production from the Chase #2 well, being the acreage allocated by the Railroad Commission to the Chase #2 well to its current depth and to 100 feet below the

current producing zone. Hillmer will obtain a new lease from the Walker Buckler Trust in sufficient acreage to provide the Debtor / Reorganized Debtor with the proration unit required by the RRC to be a legal location within the Francis Brown Survey A-5 and the John Shirley Survey No. 2 A234, in combination not to exceed 40 acres;

8. The Debtor and Hillmer will enter into a written agreement that will allow the Debtor / Reorganized Debtor to dispose of one hundred percent (100%) of the produced water from the Chase #2 Well limited only to the extent that water production from Chase #1 increases to a point that the combined production from both wells exceeds the permitted disposal amount. At the time, the RRC permitted disposal amount is exceeded, production from both Chase #1 and Chase #2 shall be curtailed in amounts pro-rationally from each well to the whole. The Debtor/Reorganized Debtor and Hillmer will share direct expenses on an equal basis. Hillmer will be responsible for maintaining true and correct records as required by all appropriate regulatory agencies. A copy of all records will be supplied to the Debtor / Reorganized Debtor. In lieu of overhead charges, the Debtor/ Reorganized Debtor will pay Hillmer $50.00 per month for regulatory filings and accounting on the Salt Water Disposal Well (Walker Buckler/TR 40A Well 1D (Lease Number 09385));

9. Hillmer will retain the American pumping unit from the Walker Buckler Lease premises, and all other equipment located on the Walker Buckler Lease premises, save and except the Lufkin pumping unit. The Debtor / Reorganized Debtor will retain the Lufkin pumping unit from the Walker Buckler Lease premises;

10.    Debtor / Reorganized Debtor will abandon all IPACT operated wells save and except the Salt Water Disposal Well (Walker Buckler/TR 40A Well 1D (Lease Number 09385));

11.    Hillmer will pay the Debtor / Reorganized Debtor $10,500.00 for the Clayton Lease (Clayton #1 and Clayton #2 Wells) within thirty (30) days of the Effective Date, and the Debtor will convey any interest it has in the Clayton Lease and Clayton #1 and Clayton #2 wells to Hillmer within thirty (30) days of the Effective Date;

12.    Hillmer will operate the Salt Water Disposal Well (Walker Buckler/TR 40A Well 1D (Lease Number 09385)) and ensure that all equipment associated with the Salt Water Disposal Well operations will remain operational at all times;

13.    Hillmer will take no action to interfere, terminate, modify and/or reduce the Debtor's / Reorganized Debtor's ability to continue to use the current Salt Water Disposal Well or a future replacement well provided that Debtor / Reorganized Debtor pays its fifty percent (50%) share of direct expenses in preparing a replacement well for disposal. The Debtor/Reorganized Debtor will retain access to the Salt Water Disposal Well currently being used or have the option of disposing into any future replacement disposal well if the current disposal well is deemed to be unfit for disposal or for any other reasons the ability of the Debtor / Reorganized Debtor to dispose of water via pipeline becomes impaired;

14.    Steve Hillmer, Trey Hawkins, their agents or any business entity (including but not limited to any corporation, limited liability company, limited or general partnership) in which they, either jointly or severally, have any ownership or other beneficial

interest, hereby agree that they will not locate, drill or operate any hydrocarbon well at a depth within the same current completion formation, being that correlative interval as can be found at a depth of 3,860 feet to 4,450 feet on the Compensated Density Neutron Microlog as the Chase A Number 2 run by Phoenix Surveys, Inc. for Hawkhill Operating LLC on May 4 2003, or which is violative of the spacing requirements mandated in the field rules established by the Texas Railroad Commission for the field in which the Chase A Number 2 well is located, the Fort Griffin, N.E. (Miss.) Field which are attached to this order as Exhibit 2 and incorporated by reference herein;

15. The Debtor / Reorganized Debtor rejected all Joint Operating Agreements with any working interest owner relating to the Chase #2 Well and its operations; and

16. The terms of the settlement between Hillmer and the Debtor, announced in open Court at the Confirmation Hearing, are approved.


# # #


**AGREED AND APPROVED:**


_____/s/ Wiley F. James, III_____
Wiley F. James, III, Counsel for Hawkhill Operating Company, LLC



_____/s/ Greg Bevel_____
Greg Bevel, Counsel for Stephen G. Hillmer

Submitted by:

Wiley F. James, III
James, Goldman & Haugland, P.C.
P.O. Box 1770
El Paso, Texas 79901
(915) 532-3911
(915) 541-6440 Fax

Please return a signed copy of the Order to the attorney listed above

26